T. Oliver Yee, Bar No. 237057
oyee@lcwlegal.com
Danny Y. Yoo, Bar No. 251574
dyoo@lcwlegal.com
Jolina Abrena, Bar No. 198683
jabrena@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045
Telephone:  310.981.2000
Facsimile:   310.337.0837

Attorneys for Defendant
CITY OF BREA

David E. Mastagni, Bar No. 204244
davidm@mastagni.com
Taylor Davies-Mahaffey, Bar No. 327673
tdavies-mahaffey@mastagni.com
MASTAGNI HOLSTEDT
A Professional Corporation
1912 "I" Street
Sacramento, CA 95811
Telephone:  916.446.4692
Facsimile:   916.447.4614

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN AGUIRRE, NEIL BALTES, BRENT BASAITES, DARREN BRECHT, BRADLEY BROWN, DAVID COLEMAN, STEPHEN DAVY, DILLON FETTY, JIM FLORES, DANIEL GIBSON, RYAN GRECO, GREGORY HARRIS, KYLE HOUK, WILLIAM JAMES, ERIC JOHNSON, JOSHUA JONES, TRAVIS KNABE, ANDREW LINSEY, CHRIS LINGWALL, RANDY LOGUE, CHRIS MARVIN, IAN MATHENY, CASEY MAZE, RANDY MCDANIEL, DAN MIELKE, CHRIS MURRAY, CAREY PARRO, ROBERT PITTS, DAVID PRICE, ALI RAHIMZADEH, CESAR ROBLES, STEVEN ROSENDALE, WAAIL SABRA, | Case No.:  8:22-CV-02236-JWH-KES<br><br>Complaint Filed: December 13, 2022<br><br>**NOTICE OF JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CASE WITH PREJUDICE**<br><br>Date:           October 27, 2023<br>Time:          9:00 a.m.<br>Courtroom:  9D<br><br>Trial Date:              October 28, 2024<br>Final Pretrial Conf.:  October 11, 2024<br>Discovery Cut-Off:   June 14, 2024 |

Notice of Joint Motion for Approval of FLSA Settlement and Dismissal of Case with Prejudice

12140852.5 BR002-025

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

BILL SCHAEFER, DAVID SCHAUTSCHICK, JOHN SCHNAKENBERG, KYLE SMITH, MARK TERRELL, RYAN VAN TRAIN, BRYAN WILLIAMS, TIMOTHY WILLIAMS, NATHAN ZELEKE and JUSTIN ZUHLKE, on behalf of themselves and all similarly situated individuals,

Plaintiffs,

v.

CITY OF BREA,

Defendant.

TO ALL PARTIES AND THEIR COUNSEL:

NOTICE IS HEREBY GIVEN that, on October 27, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of the Central District of California, located at Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Santa Ana, California 92501, Plaintiffs and Defendant will and hereby do move this Court for an order granting approval of the settlement agreement and dismissing the case with prejudice.

This motion is based on the accompanying Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice, Proposed Order, Declarations of T. Oliver Yee and David E. Mastagni, with attached exhibits, filed concurrently with the motion, all other records, pleadings and papers on file in this Action, and on such other evidence or argument as may be presented to the Court at the hearing of this motion.

///

///

///

///

///

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1    Dated: September 29, 2023              LIEBERT CASSIDY WHITMORE

2

3                                       By:   */s/ Jolina Abrena*
4                                             T. Oliver Yee
                                           Danny Y. Yoo
5                                           Jolina Abrena
                                           Attorneys for Defendant
6                                           CITY OF BREA

7    Dated:  September 29, 2023           MASTAGNI HOLSTEDT

8

9                                       By:   */s/ Taylor Davies-Mahaffey*
10                                         David E. Mastagni
                                           Taylor Davies-Mahaffey
11                                           Attorneys for Plaintiffs

12

13                          **SIGNATURE ATTESTATION**

14

15        Pursuant to Local Rule 5-4.3.4, I hereby attest that I have obtained the

16   authorization from the signatories to this e-filed document and have been

17   authorized to indicate their consent by a conformed signature (/s/) within this e-

     filed document.

18                                         */s/ Jolina Abrena*
19                                        Jolina Abrena

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1

# TABLE OF CONTENTS

2

**Page**

3    I.    INTRODUCTION .................................................................. 8

4    II.    STATEMENT OF RELEVANT FACTS .................................. 8

5        A.    BACKGROUND ........................................................ 8

6        B.    PROCEDURAL HISTORY ......................................... 9

7        C.    THE PARTIES' SETTLEMENT EFFORTS ................. 9

8        D.    RELEVANT TERMS OF THE SETTLEMENT
              AGREEMENT ......................................................... 10

9

10    III.    LEGAL STANDARD FOR SETTLEMENT OF FLSA
             CLAIMS ............................................................................ 11

11    IV.    THE SETTLEMENT IS A FAIR AND REASONABLE
             COMPROMISE OF DISPUTED CLAIMS ........................... 13

12        A.    BONA FIDE DISPUTE OF CLAIMS ........................ 13

13        B.    THE PROPOSED SETTLEMENT IS A FAIR AND
14             REASONABLE RESOLUTION OF PLAINTIFFS'
              CLAIMS ................................................................ 16

15            1.    Plaintiffs' Range of Possible Recovery ................ 16

16            2.    The Stage of the Proceedings and the Amount of
17                 Discovery Conducted .................................... 22

18            3.    The Seriousness of the Litigation Risks Faced by
                   the Parties .................................................. 23

19            4.    The Scope of Any Release Provision in the
20                 Settlement Agreement .................................. 24

21            5.    The Experience and Views of Counsel ................ 25

22            6.    The Possibility of Fraud or Collusion ................. 25

23        C.    ATTORNEYS' FEES AND COSTS ARE
              REASONABLE ...................................................... 26

24    V.    CONCLUSION .................................................................. 29

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

4

12140852.5 BR002-025

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

4

**Federal Cases**

5

*Ambrosino v. Home Depot. U.S.A., Inc.*
6       No. 11cv1319 L (MDD), 2014 WL 1671489 (S.D.Cal. Apr. 28,
        2014) ............................................................................................................... 12
7

*Anspach v. 68-444 Perez, Inc.*
8       EDCV 19-2184 JGB (SPx), 2022 WL 2162820 (C.D. Cal. Apr. 21,
        2022) ........................................................................................................... passim
9

*Bellinghausen v. Tractor Supply Co.*
10      306 F.R.D. 245 (N.D. Cal. 2015) ................................................................... 23

11
*Camacho v. Bridgeport Fin., Inc.*
        523 F.3d 973 (9th Cir. 2008) .......................................................................... 28
12

*Carson v. Billings Police Dept.*
        470 F.3d 889 (9th Cir. 2006) .......................................................................... 28
13

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*
14      No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13,
        2016) ............................................................................................................... 11
15

*Englert v. City of Merced*
16      No. 118CV01239NONESAB, 2020 WL 2215749 (E.D. Cal. May
        7, 2020) ........................................................................................................... 26
17

*Espinosa v. California College of San Diego, Inc.*
18      2018 WL 1705955 (S.D. Cal. April 9, 2018) ................................................ 28

19
*Gonzalez v. City of Maywood*
        729 F.3d 1196 (9th Cir. 2013) ........................................................................ 28
20

21
*Hightower v. JPMorgan Chase Bank*, N.A.
        2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) ................................................. 27
22

*In re Bluetooth Headset Products Liability Litigation*,
        654 F.3d 935 (9th Cir. 2011) .......................................................................... 27
23

24
*In re City of Redondo Beach FLSA Litigation*
        No. 217CV09097ODWSKX, 2021 WL 5493978 (C.D. Cal. Nov.
        23, 2021) ......................................................................................................... 28
25

*In re Mego Fin. Corp. Sec. Litig.*
26      213 F.3d 454 (9th Cir. 2000) .......................................................................... 22

27
*Khanna v. Inter-Con Sec. Sys., Inc.*
        No. CIV S-09-2214 KJM, 2013 WL 1193485 (E.D. Cal. Mar. 22,
28      2013) ............................................................................................................... 12

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

12140852.5 BR002-025

*Larsen v. Trader Joe's Co.*
2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ........................................ 25

*Linney v. Cellular Alaska P'ship*
151 F.3d 1234 (9th Cir. 1998) ........................................................... 22

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*
83 F.3d 292 (9th Cir. 1996) ............................................................. 14

*Lynn's Food Stores, Inc. v. United States*
679 F.2d 1350 (11th Cir. 1982) ................................................... 12, 13

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*
No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ........ 13

*Minizza v. Stone Container Corp. Corrugated Container Division East Plant*
842 F.2d 1456 (3d Cir. 1988) .......................................................... 14

*Moreno v. Regions Bank*
729 F.Supp.2d 1346 (M.D. Fla. 2010) .............................................. 24

*Nen Thio v. Genji, LLC*
14 F.Supp.3d 1324 (N.D. Cal. 2014) ............................................... 13

*Ontiveros v. Zamora*
303 F.R.D. 356 (E.D. Cal. 2014) ................................................. 22, 23

*Quiroz v. City of Ceres*
No. 117CV00444DADBAM, 2019 WL 1005071 (E.D. Cal. Mar. 1, 2019) ........................................................................................... 26

*Rodriguez v. Nationwide Mutual Insurance Company*
No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796 (C.D. Cal. Nov. 16, 2017) ....................................................................................... 12

*Sarabia v. Ricoh USA, Inc.*
No. 820CV00218JLSKES, 2023 WL 3432160 (C.D. Cal. May 1, 2023) ........................................................................................... 28

*Selk v. Pioneers Memorial Healthcare District*
159 F.Supp.3d 1164 (S.D. Cal. 2016) ....................................... passim

*Singer v. Becton Dickinson and Co.*
2010 WL 2196104 (C.D. Cal. April 24, 2014) ................................... 27

*Slezak v. City of Palo Alto*
No. 16-cv-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) .................................................................................. 16, 24, 27

*Valentine v. Sacramento Metropolitan Fire District*
No. 217CV00827KJMEFB, 2019 WL 651654 (E.D. Cal. Feb. 15, 2019) ........................................................................................... 26

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

6

12140852.5 BR002-025

*Vasquez v. Coast Valley Roofing, Inc.*
    266 F.R.D. 482 (E.D. Cal. 2010).......................................................................27

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ................................................................27, 28

**Federal Statutes**

29 U.S.C. section 207(h)(2)...............................................................................17, 22

29 U.S.C. section 207(k) ...........................................................................9, 14, 15, 21

29 U.S.C. section 216(b) ...................................................................................14, 15, 26

**Federal Rules**

29 C.F.R. section 778.110(b)..............................................................................15, 24

29 C.F.R. section 778.113 ...........................................................................15, 17, 24

29 C.F.R. sections 778.109-110 ................................................................................17

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Notice of Joint Motion for Approval of FLSA Settlement and Dismissal of Case with Prejudice

12140852.5 BR002-025

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs John Aguirre, Neil Baltes, Brent Basaites, Darren Brecht, Bradley Brown, David Coleman, Stephen Davy, Dillon Fetty, Jim Flores, Daniel Gibson, Ryan Greco, Gregory Harris, Kyle Houk, William James, Eric Johnson, Joshua Jones, Travis Knabe, Andrew Lindsey, Chris Lingwall, Randy Logue, Chris Marvin, Ian Matheny, Casey Maze, Randy Mcdaniel, Dan Mielke, Chris Murray, Carey Parro, Robert Pitts, David Price, Ali Rahimzadeh, Cesar Robles, Steven Rosendale, Waail Sabra, Bill Schaefer, David Schautschick, John Schnakenberg, Kyle Smith, Mark Terrell, Ryan Van Train, Bryan Williams, Timothy Williams, Nathan Zeleke and Justin Zuhlke ("Plaintiffs") and Defendant City of Brea ("Defendant" or "City") (collectively the "Parties") respectfully move this Court to approve their negotiated Settlement Agreement and Release ("Settlement Agreement") and dismiss with prejudice *John Aguirre et al. v. City of Brea* (Case No.:  8:22-CV-02236-JWH-KES).

As discussed more fully below, the Parties' Settlement Agreement resolves a bona fide dispute between the Parties, provides for fair and reasonable compensation to each Plaintiff based on the allegations set forth in the Complaint for Damages and information discovered during the litigation, and is fair and reasonable in terms of the attorneys' fees and costs sought by Plaintiffs' counsel in connection with pursuing this litigation.  The Settlement Agreement, which is signed by all Plaintiffs and Defendant, is submitted to this Court as **Exhibit 1** to the Declaration of T. Oliver Yee (("Yee Dec."), ¶ 8.)

## II.    STATEMENT OF RELEVANT FACTS

### A.    BACKGROUND

Plaintiffs are or were former fire protection employees who work or worked for Defendant's Fire Department.  Further, Plaintiffs are current or former members of the Brea Firefighters' Association ("BFA").

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

On approximately February 28, 2020, Plaintiffs and Defendant executed a tolling agreement. (Declaration of David E. Mastagni ("Mastagni Dec."), ¶ 25.) Pursuant to the tolling agreement, Plaintiffs' and similarly situated individuals' overtime claims under the Fair Labor Standards Act ("FLSA") extend back to February 28, 2017. *Id.*

## B.    PROCEDURAL HISTORY

On December 13, 2022, Plaintiffs filed a Complaint for Damages on behalf of themselves and other similarly situated employees against Defendant in the United States District Court for the Central District of California, Case No. 8:22-cv-02236-JWH-KES. Plaintiffs contend that Defendant underpaid them for overtime under the FLSA by excluding cash payments in lieu of health benefits, certificate incentive pay, and a non-discretionary bonus from the "regular rate" of pay used to calculate overtime compensation and cash-out FLSA compensatory time off. (Dkt. 1.) Plaintiffs further contend that Defendant failed to compensate them for all scheduled overtime based on the 29 U.S.C. section 207(k) 14-day work period. Plaintiffs also allege Defendant willfully violated the FLSA. Plaintiffs seek unpaid overtime, liquidated damages, interest, and attorneys' fees and costs.

On March 1, 2023, Defendant filed its Answer to Plaintiffs' Complaint. (Dkt. 13.) Defendant disputes Plaintiffs' claims in all respects, and all other claims, allegations, and requests for damages, liquidated damages, attorneys' fees and costs.

On May 5, 2023, the Parties served Initial Disclosures. The Parties exchanged additional payroll and timekeeping data in August 2023. In addition to formal discovery, Defendants provided payroll information in Excel format which Plaintiffs' counsel used to create a damages allocation formula and calculate each Plaintiff's individual damages.

## C.    THE PARTIES' SETTLEMENT EFFORTS

In recognition of high costs of litigation, the Parties engaged in ongoing

arms-length settlement negotiations.  On October 5, 2021 and November 29, 2021, the Parties attended private pre-litigation mediations with Honorable S. James Otero (Ret.).  (Mastagni Dec., ¶ 26; Yee Dec., ¶ 5.)  Following the mediation, Judge Otero issued a mediator's proposal.  While the Parties exchanged potential damages calculations and engaged in good faith settlement negotiations, they were not able to reach a settlement.  *Id.*

In late 2022, the Parties continued to try to informally resolve the issues, but they could not reach settlement.  *Id.*  As part of these efforts, the Parties exchanged payroll and timekeeping data in August 2023, and presented relevant legal authority in support of their respective positions.  (Mastagni Dec., ¶ 30; Yee Dec., ¶ 8.)  Both Parties have compromised and agreed in principle to the material terms of a settlement that would resolve and release all disputes and claims in this Action.  (Mastagni Dec., ¶ 40; Yee Dec., ¶¶ 9-15.)

## D.    RELEVANT TERMS OF THE SETTLEMENT AGREEMENT

The Parties memorialized the agreed upon terms in a long-form Settlement Agreement.  As a result of the efforts summarized above, the Parties agreed to settle this matter for a total settlement amount of $837,500.00 (eight hundred thirty-seven thousand and five hundred dollars).  This total settlement amount includes all amounts to be paid by Defendant to Plaintiffs for unpaid overtime, liquidated damages, attorneys' fees, and costs to resolve this Action.  (Mastagni Dec., ¶ 44; Yee Dec., ¶ 11(a)-(e).)  Key settlement terms are as follows:

1.    Defendant agrees to pay Plaintiffs the total amount of $628,125 (six hundred twenty-eight thousand, one hundred and twenty-five dollars).  This total payment represents unpaid overtime plus liquidated damages, which will be paid to each Plaintiff in accordance with Exhibit A to the Parties' Settlement Agreement. Plaintiffs' counsel calculated the amount of damages and the amount of liquidated damages to be paid to each Plaintiff as set forth in Exhibit A to the

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

10

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Settlement Agreement.

2.  Plaintiffs agree to release all overtime claims against Defendant under any legal theory relating to or arising from this Action under the FLSA and agree to dismiss the lawsuit with prejudice.

3.  Defendant agrees to pay Plaintiffs' counsel the amount of $190,176 (one hundred and ninety thousand, one hundred and seventy-six dollars) for Plaintiffs' reasonable attorneys' fees and the amount of $19,199 (nineteen thousand, one hundred and ninety-nine dollars) for Plaintiffs' costs in this Action.

4.  On September 26, 2023, the City and BFA executed a Side Letter Agreement regarding the City's current methodology for calculating overtime compensation of BFA members pursuant to the Memorandum of Understanding (MOU) between the City and BFA, and agree that the Side Letter will be effective immediately upon the United States District Court's approval of the negotiated Settlement Agreement in this Action.

Prior to executing the above-referenced release, each individual Plaintiff had a full and fair opportunity to consult with Plaintiffs' counsel.  (Mastagni Dec., ¶ 60.)  Every individual Plaintiff voluntarily agreed to accept the terms of the Settlement Agreement and execute the "Settlement Agreement and General Release" documents to that end.  (Mastagni Dec., ¶ 59.)

## III.   LEGAL STANDARD FOR SETTLEMENT OF FLSA CLAIMS

Settlement of collective action claims under the FLSA requires court approval.  *Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016).  The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Rodriguez v. Nationwide Mutual Insurance*

11

*Company*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov. 16, 2017). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id; see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk*, 159 F.Supp.3d at 1172.

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F.Supp.3d at 1172, citing *Ambrosino v. Home Depot. U.S.A., Inc*., No. 11cv1319 L (MDD), 2014 WL 1671489 (S.D.Cal. Apr. 28, 2014). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Selk*, 159 F.Supp.3d at 1172.

> Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA collective actions. *Khanna v. Inter-Con Sec. Sys., Inc*., No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).

With this approach, a "district court must ultimately be satisfied that the

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1    settlement's overall effect is to vindicate, rather than frustrate, the purposes of the

2    FLSA." *Id*.  Settlements that reflect a fair and reasonable compromise of issues that

3    are actually in dispute may be approved to promote the efficiency of encouraging

4    settlement of litigation.  *McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. C 10-

5    5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

6    **IV.    THE SETTLEMENT IS A FAIR AND REASONABLE COMPROMISE**

7    **OF DISPUTED CLAIMS**

8        To approve the settlement in this case, the Court must find that (1) the case

9    involves a bona fide dispute, (2) the proposed settlement agreement is fair and

10   reasonable, and (3) the award of attorneys' fees and costs are reasonable.

11   **A.    BONA FIDE DISPUTE OF CLAIMS**

12       The Court should approve the proposed Settlement Agreement because it

13   resolves several bona fide disputes between the Parties regarding legitimate

14   questions over whether Defendant has any FLSA liability and the extent of

15   Defendant's FLSA liability.  "If a settlement in an employee FLSA suit does reflect

16   a reasonable compromise over issues, such as FLSA coverage or computation of

17   back wages, that are actually in dispute[,] . . . the district court [may] approve the

18   settlement in order to promote the policy of encouraging settlement of litigation."

19   *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food*

20   *Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between

21   the Parties with respect to coverage or amount due under the [FLSA]").  The

22   purpose of this analysis is to ensure that an employee does not waive claims for

23   wages, overtime compensation, or liquidated damages when no actual dispute exists

24   between the parties.  *Id*.

25       First, the Parties dispute the applicable statute of limitations.  Plaintiffs have

26   asserted that Defendant's violations were willful, thus extending the statute of

27   limitations from two to three years.  Plaintiffs contend that Defendant willfully

28   underpaid them for overtime under the FLSA by excluding cash payments in lieu of

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

13

1    health benefits, certificate incentive pay, and a non-discretionary bonus from the

2    "regular rate" of pay used to calculate overtime compensation and cash-out FLSA

3    compensatory time off.  (Mastagni Dec., ¶ 27.)  Plaintiffs further contend that

4    Defendant failed to compensate them for all scheduled overtime based on the 14-

5    day 29 U.S.C. section 207(k) work period.  *Id.*  Defendant denies all of Plaintiffs'

6    claims and contends that there was no "willful" violation of the FLSA and the two-

7    year statute of limitations applies.  (Yee Dec., ¶ 11(a).)

8        The Parties also dispute whether Plaintiffs are entitled to liquidated damages.

9    (Yee Dec., ¶ 11(c); Mastagni Dec., ¶ 32(4).)  29 U.S.C. section 216(b) provides that

10   "an employer who violates the Act shall be liable for unpaid overtime

11   compensation plus an additional equal amount as liquidated damages." *Local 246*

12   *Util. Workers Union of Am. v. S. California Edison Co*., 83 F.3d 292, 297 (9th Cir.

13   1996).  However, liquidated damages may be denied if the employer can establish

14   "subjective and objective good faith in its violation of the FLSA." *Id.*

15       Plaintiffs contend that Defendant did not act in good faith by excluding cash

16   payments in lieu of health benefits, certificate incentive pay, and a non-

17   discretionary bonus from the "regular rate" of pay used to calculate overtime

18   compensation and cash-out FLSA compensatory time off, and by not compensating

19   them for all scheduled overtime based on the 14-day Section 207(k) work period.

20   (Mastagni Dec., ¶ 32(4).) Defendant contends it had reasonable grounds for

21   believing its conduct complied with the FLSA where the sign on bonus is

22   excludable from the "regular rate" of pay used to calculate overtime compensation

23   and cash-out FLSA compensatory time off.  (Yee Dec., ¶ 11(b).)  *Minizza v. Stone*

24   *Container Corp. Corrugated Container Division East Plant*, 842 F.2d 1456, 1458

25   (3d Cir. 1988) (held signing bonus payments were excludable from the regular rate

26   as "other similar payments" and also, the payments were not compensation for the

27   employees' service). Defendant also contends that because Plaintiffs are subject to

28   a partial overtime exemption for fire protection employees pursuant to 29 U.S.C.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

14

1  section 207(k), no liability exists for regularly scheduled overtime.  Plaintiffs

2  recognize that their claims for underpayment of regularly scheduled overtime are

3  based on a highly technical failure to designate a work period conforming to their

4  48/96 schedule and therefore liquidated damages for those claims are uncertain. As

5  such, Defendant's liability for liquidated damages is disputed.  If liquidated

6  damages were denied, Plaintiffs' total recovery would be reduced by 50%.  *See* 29

7  U.S.C. section 216(b).  (Mastagni Dec., ¶ 38; Yee Dec., ¶ 11(c).)

8        Additionally, the Parties dispute the method of how to calculate the FLSA

9  liability. (Mastagni Dec., ¶ 32(1).)  Plaintiffs assert that damages should be

10  calculated based on the method for salaried, non-exempt employees prescribed in

11  29 C.F.R. section 778.113, which uses the regularly scheduled hours as the divisor

12  to determine the "regular rate" before making the time and one-half calculation. *Id.*

13  However, Defendant maintains that Plaintiffs are only entitled to the calculation

14  methodology set forth in 29 C.F.R. section 778.110(b), which uses all hours worked

15  (including overtime hours) to calculate the "regular rate," and only applies the

16  "regular rate" to the premium (i.e., 0.5) portion of the overtime hours. (Yee Dec., ¶

17  11(f).)  The application of one method over another has a significant effect on the

18  amount of overtime owed.  Were the City to prevail on this issue, Plaintiffs'

19  damages for unscheduled overtime would be reduced approximately 70%.

20  (Mastagni Dec., ¶ 32(1);

21        Finally, the Parties dispute the extent to which Defendant is entitled to claim

22  credits for contractual overtime payments in a given work period.  Defendant

23  contends that it may credit premium non-FLSA overtime payments made to

24  Plaintiffs pursuant to the MOU towards Defendant's FLSA overtime obligations in

25  a given work period.  Even if Plaintiffs could establish a violation of the FLSA,

26  Defendant contends the overtime compensation actually paid to Plaintiffs under the

27  MOU exceeds that required under the FLSA, thus no additional compensation is

28  owed.  (Yee Dec., ¶ 11(d).)  Plaintiffs concede that Defendants would be entitled to

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

15

1    substantial offsets and credits, but used damages calculations that did not apply any

2    credits.  (Mastagni Dec., ¶ 36.)

3         Based on the foregoing, the Parties submit that the Settlement Agreement

4    resolves several bona fide disputes between the Parties that all necessarily affected

5    the existence and extent of Defendant's liability.

6    **B.    THE PROPOSED SETTLEMENT IS A FAIR AND**

7    **REASONABLE RESOLUTION OF PLAINTIFFS' CLAIMS**

8         To determine whether a FLSA settlement is fair and reasonable, courts

9    evaluate the "totality of the circumstances" within the context of the purposes of the

10   FLSA.  *Selk*, 159 F.Supp.3d at 1173; *Slezak v. City of Palo Alto*, No. 16-cv-03224-

11   LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017); *Anspach v. 68-444*

12   *Perez, Inc*., EDCV 19-2184 JGB (SPx), 2022 WL 2162820, at *4 (C.D. Cal. Apr.

13   21, 2022).  Courts in the Ninth Circuit have considered the following factors when

14   determining whether a settlement is fair and reasonable under the FLSA: (1) the

15   plaintiff's range of possible recovery; (2) the stage of proceedings and amount of

16   discovery completed; (3) the seriousness of the litigation risks faced by the parties;

17   (4) the scope of any release provision in the settlement agreement; (5) the

18   experience and views of counsel and the opinion of participating plaintiffs; and (6)

19   the possibility of fraud or collusion.  See *Selk*, 159 F.Supp.3d at 1173; *Slezak*, 2017

20   WL 2688224, at *3.

21   **1.    Plaintiffs' Range of Possible Recovery**

22        Courts in this circuit evaluate a plaintiff's range of potential recovery "to

23   ensure that the settlement amount agreed to bears some reasonable relationship to

24   the true settlement value of the claims."  *Selk*, 159 F.Supp.3d at 1173; *Anspach*,

25   2022 WL 2162820, at *4.  Under the FLSA, the maximum amount a plaintiff can

26   recover is twice the amount of underpaid wages for the three-year period prior to

27   filing or opting into the lawsuit (i.e., an award of liquidated damages coupled with a

28   finding the violation was willful).

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

16

1   Under the terms of the Settlement Agreement, Defendant will pay the total
2   settlement amount of $837,500.00, which includes all amounts to be paid by
3   Defendant to Plaintiffs for unpaid overtime, liquidated damages, attorneys' fees,
4   and costs to resolve this Action. (Mastagni Dec., ¶ 44; Yee Dec., ¶¶ 9-11.)
5   Defendant will pay Plaintiffs the total amount of $628,125, which represents unpaid
6   overtime plus liquidated damages. (Mastagni Dec., ¶ 44; Yee Dec., ¶ 9.) Plaintiffs'
7   counsel has calculated the damages and liquidated damages amounts that each
8   Plaintiff will receive. (Mastagni Dec., ¶¶ 48-50.) Each Plaintiff will receive
9   damages and liquidated damages amounts in accordance with Exhibit A to the
10  Parties' Settlement Agreement. (Mastagni Dec., ¶ 45.) Defendant will pay
11  Plaintiffs' counsel the amount of $190,176 for Plaintiffs' reasonable attorneys' fees
12  and the amount of $19,199 for Plaintiffs' costs in this Action. (Mastagni Dec., ¶ 54;
13  Yee Dec., ¶ 9.)

14  To determine Plaintiffs' damages, Plaintiffs' counsel utilized a damages
15  analysis based on the following method. The individual allocations were calculated
16  based on the relevant statutory period, using a 1.5 multiplier (i.e., the method set
17  forth by the Department of Labor (DOL) at 29 C.F.R. section 778.113 rather than
18  29 C.F.R. sections 778.109-110). (Mastangi Dec., ¶ 47.) Additionally, for
19  unscheduled overtime, the calculations used the contract definition of overtime
20  hours which exceeds the FLSA definition of overtime hours because paid time off
21  was counted towards the overtime threshold for significant portions of the recovery
22  period. *Id.* Further, the scheduled overtime for each Plaintiff was calculated at the
23  maximum possible amount regardless of whether leave was taken in the pay period
24  that the scheduled overtime accrued. *Id.* No credits or offsets otherwise available
25  to Defendant pursuant to 29 U.S.C. section 207(h)(2) were applied in making these
26  calculations. *Id.* Thus, these formulas significantly exceed the maximum recovery
27  available under the FLSA. *Id.* As a result, the damages calculations exceed the
28  maximum amount that would be recoverable should this case proceed to trial.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

17

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

The calculations for damages based on the regular rate shortages were made as follows: each Plaintiff's annual total for certificate incentive, bonus, and cash-in-lieu payments were divided by 2,912 hours, which is the total number of hours each employee was scheduled to work under the MOU. (Mastagni Dec., ¶ 48(a).) Adjustments were made to the hour divisor if a Plaintiff was employed for only part of any year. *Id.* Additionally, the certificate incentive and cash-in-lieu damages were calculated only through April 2021, when the City updated its pay practices to include those items in the regular rate used to calculate overtime. *Id.* In the calculations, the bonus was split between 2018 and 2019 to reflect the work periods for which it compensated. *Id.* The cash-in-lieu damages were doubled to account for recoverable liquidated damages. *Id.* Each Plaintiff's per-hour values of the certificate incentives, bonus, and cash-in-lieu were added together to equal the shortage in the amount that the City had used to determine the regular rate for overtime calculations ("Shortage"). (Mastagni Dec., ¶ 48(b).) This Shortage was then applied to three different categories of overtime hours to determine Plaintiffs' damages. *Id.*

First, for the category of scheduled overtime hours, Plaintiffs had already been paid the correct regular rate for the straight time portion of this time as their base salary, because they had, in fact, received the cash value of the certificate incentive, bonus, and cash-in-lieu. (Mastagni Dec., ¶ 48(c).) Thus, the damages comprise only the Shortage in the overtime pay calculation. *Id.* Therefore, the formula used to calculate this category was: Number of Scheduled Overtime Hours x Shortage x 0.5. *Id.*

Second, for other categories of paid overtime (e.g., overtime premium and strike team overtime), both the base salary and the overtime calculations omitted the Shortage value. (Mastagni Dec., ¶ 48(d).) Therefore, the formula used to calculate this category was: Number of Paid Overtime Hours x Shortage x 1.5. *Id.* For these two categories of damages relating to the under-calculation of the regular

18

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1  rate, Plaintiffs were allocated 100% of potential damages using the maximum

2  recovery period, including liquidated damages.  (Mastagni Dec., ¶ 48(e).)

3       The calculations for the third category of overtime, scheduled overtime hours

4  that were not paid as overtime due to the improper designation of a 14-day work

5  period for Plaintiffs working a 48/96 schedule, were made as follows: the 48/96

6  schedule reoccurs every 12 days, thus the alternative work period is typically set at

7  12 or 24 days.  (Mastagni Dec., ¶ 49(a).)  Using either of those work periods,

8  Plaintiffs would have averaged 6 hours of scheduled overtime in each 14-day pay

9  period.  *Id.*  That is because employees on such a schedule would work 192 hours

10  every 24 days, with a 207(k) threshold of 182 hours, resulting in 10 hours of

11  scheduled overtime each period.  *Id.*  That equals 156 hours of scheduled overtime

12  each year, for an average of 6 hours of scheduled overtime every bi-weekly pay

13  period.  *Id.*  However, based on the misalignment between the 48/96 schedule and

14  the City's designated 14-day work period, Plaintiffs worked the following number

15  of scheduled hours over three consecutive work periods: 144 hours, 96 hours, 96

16  hours.  (Mastagni Dec., ¶ 49(b).)  Using the 207(k) 106-hour threshold, for every

17  three consecutive work periods, Plaintiffs' schedules included 38 hours of

18  scheduled overtime in one period, and no scheduled overtime during the other two.

19  *Id.*  This cycle repeats 8.69 times per year.  *Id.*

20       Rather than compensating Plaintiffs for their actual work schedule, the City

21  treated them as if they worked a 24-day work period.  (Mastagni Dec., ¶ 49(c).)

22  Thus, the MOU compensated employees as if they worked 112 scheduled hours per

23  14-day work period, meaning they received 6 hours of scheduled overtime every

24  pay period.  *Id.*  For the work periods in which Plaintiffs worked 38 hours of

25  scheduled overtime, they were paid for only 6 hours of overtime, and shorted the

26  remaining 32 hours.  *Id.*  Therefore, Plaintiffs worked 330.22 hours of regularly

27  scheduled overtime during these pay periods each year (38 x 8.69 = 330.22) but

28  were only paid for 52.14 hours (6 x 8.69 = 52.14), resulting in 278.08 hours of

19

1    scheduled overtime worked but not paid each year.  *Id.*

2          The damages for scheduled but unpaid overtime were calculated with a 0.5

3    multiplier because Plaintiffs' base salaries already compensated them for the

4    straight time portion of the hours worked in excess of 106 hours in a 14-day work

5    period.  (Mastagni Dec., ¶ 49(d).)  Therefore, the formula used to calculate this

6    category of damages was: Number of Hours x (Regular Rate + Shortage) x 0.5.

7    (Mastagni Dec., ¶ 49(e).)  These calculations were based on the amount of time

8    each Plaintiff worked during the recovery period.  *Id.*  $361,970.09 of the

9    settlement payment to Plaintiffs was allocated on a pro rata basis for these unpaid

10   overtime damages.  (Mastagni Dec., ¶ 49(f).)  This amount represents about 38% of

11   the maximum amount of damages for these claims.  *Id.*

12         However, the maximum damages assumed no leave was taken in these

13   periods and applied a three-year recovery period.  (Mastagni Dec., ¶ 49(g).)  The

14   backpay for these claims were discounted because substantial amounts of leave

15   were taken by Plaintiffs throughout the recovery period, and any leave taken during

16   the thirdpay period with 38 hours of regularly scheduled overtime would likely

17   eliminate any liability in that period if this case proceeded to trial.  *Id.*

18   Additionally, the maximum recovery calculation assumed willfulness and

19   liquidated damages, but the technical nature of this violation presents a risk that

20   neither would be awarded.  *Id.*  Taken as a whole, the damages allocated to these

21   claims approximates the maximum likely recovery at trial. (Mastagni Dec., ¶ 55.)

22         The three categories of overtime damages were totaled to determine the final

23   settlement payment to each Plaintiff.  (Mastagni Dec., ¶ 50.)

24         For each Plaintiff, one-half of the allocation represents back pay for unpaid

25   wages and the other half represents liquidated damages.  *Id.*  Damages were

26   assessed on a back pay calculation going back to February 28, 2017, pursuant to the

27   Parties' tolling agreement.  (Mastagni Dec., ¶ 53.)  The Parties agree that the

28   allocations of the total payment amount are consistent with and within the range of

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

20

a reasonable result that each Plaintiff might expect to obtain if they prevailed after a trial.  (Mastagni Dec., ¶ 55; Yee Dec., ¶ 12.)

Defendant represented that it corrected the violative policies by including certificate incentives and cash-in-lieu in the regular rate beginning in April 2021, and by changing its pay period around February 2022.  (Mastagni Dec., ¶ 53.) Therefore, the Settlement Agreement does not specify any related pay practice changes required of the City.  *Id.*

Individual recovery is not uniform, but Plaintiffs adequately explain this difference.  *See Anspach*, 2022 WL 2162820, at \*4.  The allocation of the total payment amount to Plaintiffs ranges from $1,171.78 to $79,531.68.  (Yee Dec., **Exhibit 1**, Exhibit A to Settlement Agreement.)  While the individual recovery amounts are not uniform, the differences consider the following factors for each Plaintiff: the length of the relevant statutory period, the length of employment, the rate of pay, and whether each Plaintiff received cash payments in lieu of health benefits, certificate incentive pay, and a non-discretionary signing bonus, and the length of time that each Plaintiff received such special pay.  (Mastagni Dec., ¶ 43.)

Based on the damages methodology and the fact that it would be extremely burdensome for the Parties to calculate precise damages for each Plaintiff for each workweek, the Parties agreed to an allocation of the total payment amount in wages and liquidated damages based on Plaintiffs' counsel's most favorable calculations. (Mastagni Dec., ¶ 46; Yee Dec., ¶¶ 9-12.)  The Parties agree that allocations to each Plaintiff are consistent with the damages calculations and within the range of a reasonable result that each Plaintiff might expect to obtain if they prevailed after a trial.  (Mastagni Dec., ¶ 55; Yee Dec., ¶¶ 9-12.)

The Parties dispute the extent of the offsets and credits which Defendant is entitled to assert.  Defendant contends that Plaintiffs are subject to a partial overtime exemption for fire protection employees pursuant to 29 U.S.C. section 207(k) and that Defendant may credit premium non-FLSA overtime payments

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

made to Plaintiffs pursuant to the MOU towards Defendant's FLSA overtime

obligations in a given work period. (Yee Dec., ¶ 11(d).) However, the Parties did

not apply offsets and credits under 29 U.S.C. section 207(h)(2) for payment of non-

FLSA overtime. (Mastagni Dec., ¶ 36; Yee Dec., ¶ 11(e).) Not applying statutory

offsets and credits provided greater damages calculations for Plaintiffs as compared

to that which is potentially recoverable under the FLSA. *Id.*

Taken together, these terms of the Settlement Agreement provide Plaintiffs

with prompt, significant, and certain recovery, especially given the risks presented

by continued litigation. Given the inherent risks, this settlement provides Plaintiffs

with a fair and equitable recovery. (Mastagni Dec., ¶ 58; Yee Dec., ¶¶ 9-12.)

## 2.    The Stage of the Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery

completed to ensure that parties have an adequate appreciation of the merits of the

case before reaching a settlement. *Selk*, 159 F. Supp. 3d at 1177; *Anspach*, 2022

WL 2162820, at *5; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

Cir. 1998) ("'formal discovery is not a necessary ticket to the bargaining table'

where the parties have sufficient information to make an informed decision about

settlement"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)

(explaining that a combination of investigation, discovery, and research conducted

prior to settlement can provide sufficient information for class counsel to make an

informed decision about settlement); *Ontiveros v. Zamora*, 303 F.R.D. 356, 371

(E.D. Cal. 2014) ("the parties' apparent careful investigation of the claims and their

resolution in consideration of the views of a third party mediator weigh in favor of

settlement").

On October 5, 2021 and November 29, 2021, the Parties attended private pre-

litigation mediations with Honorable S. James Otero (Ret.). (Mastagni Dec., ¶ 26;

Yee Dec., ¶ 5.) The Parties conducted their respective investigations and

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

22

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1   exchanged potential damages calculations prior to the mediation.  *Id.*  Although the

2   Parties engaged in good faith settlement negotiations and considered Judge Otero's

3   views during the mediation sessions, they were not able to reach a settlement.  *Id*.

4   Then, in late 2022, the Parties continued to try to informally resolve the issues, but

5   they could not reach settlement.  In August 2023, the Parties exchanged further

6   payroll and timekeeping data to prepare additional damages calculations. (Mastagni

7   Dec., ¶ 30; Yee Dec., ¶ 8.)

8         Here, counsel had sufficient information based on the Parties' pre-litigation

9   investigations, their exchange of potential damages calculations and Initial

10  Disclosures, and their consideration of the private mediator's views to make

11  informed decisions about settlement.  *Ontiveros,* 303 F.R.D. at 371.  (Mastagni

12  Dec., ¶ 41; Yee Dec., ¶ 8.)  The Parties agree that they have conducted sufficient

13  informal discovery and formal discovery for Plaintiffs to understand their relative

14  litigation positions.  *Id.*  This factor weighs in favor of approving the Parties'

15  Settlement Agreement.

16         **3.**   **The Seriousness of the Litigation Risks Faced by the Parties**

17        Settlement is favored where "there is a significant risk that litigation might

18  result in a lesser recover[y] for the class or no recovery at all."  *Bellinghausen v.*

19  *Tractor Supply Co*., 306 F.R.D. 245, 255 (N.D. Cal. 2015); *Anspach*, 2022 WL

20  2162820, at *5.  As discussed in greater detail above, the Settlement Agreement

21  provides Plaintiffs with significant relief and continued litigation would harm

22  Plaintiffs by jeopardizing the relief already secured for them.

23        There are a number of variables and risks that could impact the calculation of

24  damages in this case.  If there were to be a finding of FLSA liability at trial,

25  Plaintiffs may be limited in any recovery since the damages calculations do not

26  apply offsets and credits Defendant otherwise would be legally entitled to.

27  (Mastagni Dec., ¶ 36; Yee Dec., ¶¶ 11-14.)  Further, Plaintiffs' recovery for

28  unscheduled overtime could be reduced by approximately 70% if the Court applied

                                            23

1   the calculation methodology set forth in 29 C.F.R. section 778.110(b) rather than

2   that in 29 C.F.R. section 778.113.  (Mastagni Dec., ¶ 32(1).)

3        Plaintiffs may also be limited in their recovery if Defendant proves it acted in

4   good faith and that its underpayment of wages was not willful. (Mastagni Dec., ¶

5   38.)  If Plaintiffs do not prevail on these issues, their recovery would be

6   significantly diminished if not eliminated.  All of these concerns pose a risk to

7   Plaintiffs that could decrease their overall recovery.

8        **4.**      **The Scope of Any Release Provision in the Settlement**

9             **Agreement**

10       "A[n] FLSA release should not go beyond the specific FLSA claims at issue

11  in the lawsuit itself."  *Slezak*, 2017 WL 2688224, at *5; *Anspach*, 2022 WL

12  2162820, at *5.  Expansive release of claims would allow employers to unfairly

13  extract valuable concessions from employees using wages that they are guaranteed

14  by statute.  *See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla.

15  2010) ("An employee who executes a broad release effectively gambles,

16  exchanging unknown rights for a few hundred or a few thousand dollars to which

17  he is otherwise unconditionally entitled.").

18       Here, the release covers all of Plaintiffs' "claims relating to the ACTION

19  against the CITY under the FLSA and memorandum of understanding between the

20  City and BFA in regard to overtime pay that may exist or have existed during the

21  Relevant Statutory Period."  The release "extends only to all grievances, disputes,

22  or claims of every nature and kind, known or unknown, suspected or unsuspected,

23  arising from or attributable to PLAINTIFFS' claims that the CITY violated the

24  FLSA.  The PARTIES understand that this release does not include claims relating

25  to conduct or activity that does not arise from or is not attributable to

26  PLAINTIFFS' FLSA overtime claims."  (Yee Dec., ¶ 8; **Exhibit 1**, Settlement

27  Agreement.)

28       The Parties share a further understanding that only those claims arising from

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

24

or attributable to Plaintiffs' claims in this Action are being released.  In fact, the

release itself confirms that "The PARTIES understand that this release does not

include claims relating to conduct or activity that does not arise from or is not

attributable to PLAINTIFFS' FLSA overtime claims." *Id.*  Such a narrowly-

tailored and carefully drawn release, coupled with the Parties' shared

understanding, favors approval of settlement.

### 5.    <u>The Experience and Views of Counsel</u>

In determining whether a settlement is fair and reasonable, "[t]he opinions of

counsel should be given considerable weight both because of counsel's familiarity

with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's*

*Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014); *Anspach*, 2022 WL 2162820,

at *5.  Here, Plaintiffs' counsel asserts that the terms of the Settlement Agreement

are fair and reasonable, and that the settlement amount is within the range that

Plaintiffs could expect to recover if this matter were to proceed to trial.  (Mastagni

Dec., ¶ 55.)  Plaintiffs' counsel has over 20 years of experience litigating FLSA

claims and has settled multiple FLSA claims and obtained court approval of those

settlements.  (Mastagni Dec., ¶¶ 9-10.)  Thus, Plaintiffs' counsel's evaluation of the

case is reliable.

In addition, counsel for Defendant has years of experience advising public

agencies on FLSA matters and defending public agencies in FLSA lawsuits.  (Yee

Dec., ¶ 2.)  Based on this experience, it is the position of defense counsel that this

settlement is fair and reasonable and will have a materially beneficial effect on

Plaintiffs' compensation. *Id*.

### 6.    <u>The Possibility of Fraud or Collusion</u>

Here, at all times, settlement negotiations have been at arms-length and there

has been no fraud or collusion.  (Mastagni Dec., ¶ 56; Yee Dec., ¶ 13.)  Approval

by the Plaintiffs further supports a finding that counsel did not collude, or otherwise

allow self-interest to infect the settlement negotiations. *See Quiroz v. City of Ceres*,

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

No. 117CV00444DADBAM, 2019 WL 1005071, at *5 (E.D. Cal. Mar. 1, 2019);
*Valentine v. Sacramento Metropolitan Fire District*, No. 217CV00827KJMEFB,
2019 WL 651654, at *6 (E.D. Cal. Feb. 15, 2019)**;** *Englert v. City of Merced,* No.
118CV01239NONESAB, 2020 WL 2215749, at *10 (E.D. Cal. May 7, 2020),
report and recommendation adopted (No. 118CV01239NONESAB) 2020 WL
2732031 (E.D. Cal., May 26, 2020).

The Parties have participated in lengthy settlement discussions on several
occasions, including the use of a third-party mediator.  (Mastagni Dec., ¶¶ 26, 30-
31; Yee Dec., ¶¶ 5, 13.)  In addition, each Plaintiff has been provided with a copy
of the Settlement Agreement and has had an opportunity to review it and discuss it
with their attorneys.  (Mastagni Dec., ¶ 60.)  After doing so, each Plaintiff
voluntarily agreed to the terms of the Settlement Agreement, as well as the
individual settlement amounts.  (Mastagni Dec., ¶ 59.)  The Plaintiffs' agreement to
the terms of the settlement favors approval.  See *Quiroz v. City of Ceres*, No.
117CV00444DADBAM, 2019 WL 1005071, at *5 (E.D. Cal. Mar. 1, 2019);
*Valentine v. Sacramento Metropolitan Fire District*, No. 217CV00827KJMEFB,
2019 WL 651654, at *6 (E.D. Cal. Feb. 15, 2019); *Englert v. City of Merced*, No.
118CV01239NONESAB, 2020 WL 2215749, at *10 (E.D. Cal. May 7, 2020),
report and recommendation adopted, No. 118CV01239NONESAB, 2020 WL
2732031 (E.D. Cal., May 26, 2020).  Accordingly, this factor weighs in favor of
settlement.

### C.    ATTORNEYS' FEES AND COSTS ARE REASONABLE

"Where a proposed settlement of FLSA claims includes the payment of
attorney's fees, the court must also assess the reasonableness of the fee award."
*Selk*, 159 F.Supp.3d at 1180; see also 29 U.S.C. § 216(b) (providing that, in an
FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the
defendant, and costs of the action").  Here, the Parties' Settlement Agreement
provides that Defendant agrees to pay Plaintiffs' counsel the total amount of

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

$209,375, which includes Plaintiffs' attorneys' fees in the amount of $190,176 and Plaintiffs' costs in the amount of $19,199. The Parties stipulated to the above fees in an attempt to resolve the dispute expediently and with the Plaintiffs' best interests in mind. (Mastagni Dec., ¶ 61.)

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047-48; *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure").

Pursuant to the Settlement Agreement, of the $837,500 final settlement, $190,176 is allocated to Plaintiffs' counsel for attorneys' fees, which represents 22.7% of the total settlement amount. This percentage amount is consistent with the benchmark for the award of attorneys' fees in common fund cases. *Vizcaino,* 290 F.3d at 1047-48; *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 942. This percentage amount is less than awards allowed in similar cases. *See Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a settlement of a FLSA collective action, which was 31% of the total settlement amount); *Hightower v. JPMorgan Chase Bank*, N.A. 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30% of the settlement fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing to wage and hour cases where courts approved awards ranging from 30 to 33%); *Singer v. Becton Dickinson and Co.* 2010 WL 2196104 (C.D. Cal. April 24, 2014), at *8 (approving an attorneys' fee award of 33.33%).

Calculation of the lodestar amount may be used as a cross-check to assess the

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

27

reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050; *Anspach*,

2022 WL 2162820, at *5. When using a lodestar as a cross-check, courts "'…need

not be as exhaustive as a pure loadstar calculation' because it only serves as a point

of comparison to assess the reasonableness of a percentage award." *Espinosa v.*

*California College of San Diego, Inc*., 2018 WL 1705955, at *10 (S.D. Cal. April 9,

2018).

Here, the attorneys' fees and costs provided by the Settlement Agreement are

on par with those that would be provided to a prevailing party in a wage and hour

action if the fee award was calculated based upon the hours expended at the

prevailing rates. Prevailing parties are entitled to receive an award of fees for all

hours reasonably expended at rates in line with the "prevailing market rate."

*Carson v. Billings Police Dept*., 470 F.3d 889, 891 (9th Cir. 2006). The "prevailing

market rate" is the rate prevailing in the community for similar work performed by

attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport*

*Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008). The relevant community is the forum

in which the district court sits. *Id*. at 979; *Gonzalez v. City of Maywood*, 729 F.3d

1196, 1205 (9th Cir. 2013); *In re City of Redondo Beach FLSA Litigation*, No.

217CV09097ODWSKX, 2021 WL 5493978, at *4 (C.D. Cal. Nov. 23, 2021).

The Central District of California has looked to the "Real Rate Report" to

assess whether attorneys' fees are reasonable for lodestar purposes. The 2022 Real

Rate Report states that for Los Angeles area attorneys working in the area of

Employment and Labor, the mean hourly rates were $743 for partners, $446 for

associates, and $247 for paralegals. *See Sarabia v. Ricoh USA, Inc*., No.

820CV00218JLSKES, 2023 WL 3432160, at *8 (C.D. Cal. May 1, 2023). Applying

these rates to the hours reasonably expended on this matter to date by Plaintiffs'

counsel results in attorneys' fees equal to $192,765.08. (Mastagni Dec., ¶¶ 63-64.)

The attorneys' fees total in this settlement ($190,176) therefore reflects a multiplier

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

28

1  of less than 1.[1]  *Id.*  Therefore, in light of the lodestar cross-check, this Court should

2  approve the attorneys' fees and costs.[2]

3  **V.**    **CONCLUSION**

4        Based on the foregoing, the Parties respectfully move this Court to approve

5  the proposed Settlement Agreement.

6

7  Dated: September 29, 2023                    LIEBERT CASSIDY WHITMORE

8

9                                          By:  */s/ Jolina Abrena*

10                                              T. Oliver Yee
                                                Danny Y. Yoo
11                                              Jolina Abrena
                                                Attorneys for Defendant
12                                              CITY OF BREA

13  Dated:  September 29, 2023                   MASTAGNI HOLSTEDT

14

15

16                                         By:  */s/ Taylor Davies-Mahaffey*

17                                              David E. Mastagni
                                                Taylor Davies-Mahaffey
18                                              Attorneys for Plaintiffs

19

20

21

22

23

24

25

26  [1] Plaintiffs' counsel estimates an additional 20 hours will be expended to prepare
    for and attend the settlement approval hearing and to administer the settlement
27  agreement, further reducing the multiplier. (Mastagni Dec., ¶ 65.)

    [2] Defendant does not take a position on Plaintiffs' counsel's hourly rates or the
28  hours attributable to their work on this matter.

12140852.5 BR002-025

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045