JS-6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOHN AGUIRRE,
NEIL BALTES,
BRENT BASAITES,
DARREN BRECHT,
BRADLEY BROWN,
DAVID COLEMAN,
STEPHEN DAVY,
DILLON FETTY,
JIM FLORES,
DANIEL GIBSON,
RYAN GRECO,
GREGORY HARRIS,
KYLE HOUK,
WILLIAM JAMES,
ERIC JOHNSON,
JOSHUA JONES,
TRAVIS KNABE,
ANDREW LINSEY,
CHRIS LINGWALL,
RANDY LOGUE,
CHRIS MARVIN,
IAN MATHENY,
CASEY MAZE,
RANDY MCDANIEL,
DAN MIELKE,
CHRIS MURRAY,
CAREY PARRO,
ROBERT PITTS,
DAVID PRICE,
ALI RAHIMZADEH,
CESAR ROBLES,
STEVEN ROSENDALE,
WAAIL SABRA,
BILL SCHAEFER,
DAVID SCHAUTSCHICK,

Case No. 8:22-cv-02236-JWH-KES

**ORDER GRANTING MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CASE WITH PREJUDICE [ECF No. 25]**



1   JOHN SCHNAKENBERG,
    KYLE SMITH,
2   MARK TERRELL,
    RYAN VAN TRAIN,
3   BRYAN WILLIAMS,
    TIMOTHY WILLIAMS,
4   NATHAN ZELEKE, and
    JUSTIN ZUHLKE, on behalf of
5       themselves and all similarly situated
        individuals,
6
                    Plaintiffs,
7
            v.
8
    CITY OF BREA,
9
                    Defendant.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Before the Court is the joint motion for approval of a collective action settlement and attorneys' fees filed by Plaintiffs John Aguirre, Neil Baltes, Brent Basaites, Darren Brecht, Bradley Brown, David Coleman, Stephen Davy, Dillon Fetty, Jim Flores, Daniel Gibson, Ryan Greco, Gregory Harris, Kyle Houk, William James, Eric Johnson, Joshua Jones, Travis Knabe, Andrew Lindsey, Chris Lingwall, Randy Logue, Chris Marvin, Ian Matheny, Casey Maze, Randy Mcdaniel, Dan Mielke, Chris Murray, Carey Parro, Robert Pitts, David Price, Ali Rahimzadeh, Cesar Robles, Steven Rosendale, Waail Sabra, Bill Schaefer, David Schautschick, John Schnakenberg, Kyle Smith, Mark Terrell, Ryan Van Train, Bryan Williams, Timothy Williams, Nathan Zeleke, and Justin Zhulke (collectively, "Plaintiffs") and Defendant City of Brea ("Brea").[1]  The Court concludes that this matter is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the moving papers,[2] and in the absence of any opposition, the Court orders that the Motion is **GRANTED**, as set forth herein.

## I.  BACKGROUND

Plaintiffs and other similarly situated individuals are current or former Brea Fire Department Employees and members of the Brea Firefighters' Association ("BFA").[3]  Plaintiffs commenced this action in December 2022 under the Fair Labor Standards Act (the "FLSA") to recover from Brea "unpaid overtime and other compensation, interest thereon, liquidated

---

[1]    Joint Mot. for Approval of FLSA Settlement and Dismissal of Case with Prejudice (the "Motion") [ECF No. 25].

[2]    The Court considered the documents of record in this action, including the following papers:  (1) Compl. (the "Complaint") (including its attachments) [ECF No. 1]; and (2) Motion (including its attachments).

[3]    *See* Complaint ¶ 23; Motion 8:26-28.

damages, costs of suit, and reasonable attorney fees."[4]  Plaintiffs allege that Brea excluded certain remunerations and undervalued the "regular rate" of pay by failing to include certificate incentive payments, failing to include retroactive pay, and failing to include cash-in-lieu of health care.[5]  Plaintiffs also contend that Brea's flexible benefit plan is not a "bona fide" plan; that Brea failed to compensate for all overtime hours worked by implementing a payroll practice of undercounting the number of overtime hours regularly worked under the 48/96 schedule; and that Brea's violations of the FLSA were knowing and willful.[6] The Complaint asserts one claim for relief:  FLSA—Failure to Pay All Overtime Compensation Earned.[7]

In June 2023, the parties filed a joint stipulation to certify this matter conditionally as a collective action under 29 U.S.C. § 216(b), consisting of all joined Plaintiffs.[8]  The Court approved the conditional certification.[9]

Under the Settlement Agreement and Release, the parties agreed to settle this matter for $837,500.[10]  That sum includes all amounts paid by Brea to Plaintiffs for unpaid overtime, liquidated damages, attorneys' fees, and costs to

---

[4]    Complaint ¶ 1.

[5]    *Id.* at ¶¶ 25-55.

[6]    *Id.* at ¶¶ 56-90.

[7]    *Id.* at ¶¶ 91-99.

[8]    Joint Stipulation re Conditional Certification of FLSA Collective Action [ECF No. 23].

[9]    Order Granting Stipulation for Conditional Certification of FLSA Collective Action [ECF No. 24].

[10]    Settlement Agreement and Release ¶ 1(a), Ex. 1 [ECF No. 25-1] 10-63 [CM/ECF pagination]; Decl. of T. Oliver Yee (the "Yee Declaration") ¶ 9 [ECF No. 25-1] 1-10; Decl. of David E. Mastagni (the "Mastagni Declaration") ¶ 44 [ECF No. 25-2].

resolve the action.[11]  Of that amount, Brea agrees to pay Plaintiffs $628,125 for unpaid overtime and liquidated damages to each Plaintiff in accordance with the attached exhibit to the parties' settlement agreement.[12]  Brea will pay $190,176 to Plaintiffs' counsel for Plaintiffs' reasonable attorneys' fees and $19,199 for Plaintiffs' costs in the action.[13]  Brea and the BFA executed a Side Letter Agreement regarding Brea's current methodology for calculating overtime compensation pursuant to the Memorandum of Understanding, which will be effective immediately upon the Court's approval of the settlement agreement.[14]  Plaintiffs agree to release all overtime claims against Brea under any legal theory arising from or related to this action under the FLSA, and Plaintiffs agree to dismiss the lawsuit with prejudice.[15]

## II.  LEGAL STANDARD

"[C]laims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court."  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  "The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval."  *Otey v. CrowdFlower, Inc.*, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).  Accordingly, "district courts in this Circuit widely follow the Eleventh Circuit's" standard set forth in *Lynn's Food Stores, Inc. v.*

---

[11]     Yee Declaration ¶ 11; Mastagni Declaration ¶ 44.

[12]     Settlement Agreement and Release ¶ 1(b); Yee Declaration ¶ 9; Mastagni Declaration ¶ 44.

[13]     Settlement Agreement and Release ¶ 1(e); Yee Declaration ¶ 9; Mastagni Declaration ¶ 44.

[14]     Motion 11:10-16.

[15]     Settlement Agreement and Release ¶ 6; Yee Declaration ¶ 9; Mastagni Declaration ¶ 40.

1    *United States*, 679 F.2d 1350 (11th Cir. 1982).  *Rodriguez v. Nationwide Mut. Ins.*

2    *Co.*, 2017 WL 7803796, at \*1 (C.D. Cal. Nov. 16, 2017).  When reviewing a

3    FLSA settlement, a district court must first "determine whether the settlement

4    represents a fair and reasonable resolution of a bona fide dispute."  *Selk*, 159

5    F. Supp. 3d at 1172 (internal citation and quotation marks omitted).  "After a

6    district court is satisfied that a bona fide dispute exists, it must then determine

7    whether the settlement is fair and reasonable."  *Id.*

8                                    **III.  ANALYSIS**

9    **A.    Approval of Settlement**

10                  **1.        Bona Fide Dispute**

11            "A bona fide dispute exists when there are legitimate questions about 'the

12   existence and extent of Defendant's FLSA liability.'"  *Id.* at 1172 (citing

13   *Ambrosino v. Home Depot. U.S.A., Inc.*, 2014 WL 167189 (S.D. Cal. Apr. 28,

14   2014)).

15            Here, the parties contend that the "Settlement Agreement resolves

16   several bona fide disputes between the Parties that all necessarily affected the

17   existence and extent of [Brea's] liability."[16]

18            The parties dispute the applicable statute of limitations.[17]  Plaintiffs argue

19   that, because Brea's violations of the FLSA were willful, the statute of

20   limitations was extended to three years.[18]  But Brea "disagreed, asserting only a

21   two-year statute of limitations applied."[19]  The parties also dispute whether

22   Plaintiffs are entitled to liquidated damages.[20]  While Plaintiffs contend that

23

_____

24   [16]      Motion 16:3-5.

25   [17]      *Id.* at 13:25-27.

26   [18]      Mastagni Declaration ¶ 32(3).

27   [19]      *Id.*

28   [20]      Motion 14:8.

Brea did not act in good faith, Brea maintains that it reasonably believed that its conduct complied with the FLSA.[21]  Further, the parties dispute the method to calculate FLSA liability.[22]  Plaintiffs asserts that their "damages should be calculated based on the method for salaried, non-exempt employees prescribed in 29 C.F.R. section 778.113, which uses the regularly scheduled hours as the divisor to determine the 'regular rate' before making the time and one-half calculation."[23]  However, Brea contends that "Plaintiffs are only entitled to the calculation methodology set forth in 29 C.F.R. section 778.110(b), which uses all hours worked (including overtime hours) to calculate the 'regular rate,' and only applies the 'regular rate' to the premium (i.e., 0.5) portion of the overtime hours."[24]  Finally, the parties dispute the extent to which Brea may claim credits for contractual overtime payments in a given work period.[25]

In view of those disagreements, the Court concludes that bona fide disputes exist between the parties.  Those disagreements show that there is "some doubt" that Plaintiffs would succeed on the merits.  *Selk*, 159 F. Supp. 3d at 1172 (citation omitted).  Those disagreements also affect the "extent" of Brea's liability.  *See id.*  For example, if liquidated damages are denied, then Plaintiffs' range of recovery would be reduced by 50%,[26] and, if Brea's method for calculating FLSA liability prevailed, then "Plaintiffs' damages for

---

[21]    Mastagni Declaration ¶ 32(4); Yee Declaration ¶ 11(c).

[22]    Motion 15:8-9.

[23]    Mastagni Declaration ¶ 32(1).

[24]    *Id.*

[25]    Motion 15:21-22.

[26]    Yee Declaration ¶ 11(c).

unscheduled overtime would be reduced by approximately 70%."[27]  Therefore, bona fide disputes exist between the parties.

### 2.   Fair and Reasonable Settlement

The "following factors should be considered when determining whether a settlement is fair and reasonable under the FLSA:  (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion."  *Selk*, 159 F. Supp. 3d at 1173.  The Court assesses each factor in turn.

### a.   Plaintiffs' Range of Possible Recovery

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims."  *Id.* at 1174.  The parties contend that the settlement provides Plaintiffs with a fair and equitable recovery, especially in view of the risks presented by continued litigation.[28]

Brea will pay Plaintiffs $628,125 in unpaid overtime and liquidated damages.  "The allocation of the total payment amount to Plaintiffs ranges from $1,171.78 to $79,531.68."[29]  Plaintiffs' counsel's calculations were used to determine the allocation of the total payment amount in wages and liquidated damages.[30]  Individual allocations were calculated based upon "the most favorable assumptions" by using the maximum Relevant Statutory Period and a

---

[27]     Mastagni Declaration ¶ 32(1).

[28]     Motion 22:7-10.

[29]     Mastagni Declaration ¶ 45.

[30]     *Id.* at ¶ 46.

1.5 multiplier.[31]  Unscheduled overtime was calculated using "the contract definition of overtime hours which exceeds the FLSA definition of overtime hours."[32]  Scheduled overtime was "calculated at the maximum possible amount regardless of whether leave was taken in the pay period that the scheduled overtime accrued."[33]  Those "formulas significantly exceed the maximum recovery available under the FLSA."[34]

Each Plaintiff's annual total for Certificate Incentive, Bonus, and Cash-in-Lieu payments was divided by 2,912 hours (the total number of hours each employee was scheduled to work under the Memorandum of Understanding).[35]  Some moderate adjustments were made:  specifically, modifications were made to the hour divisor if a Plaintiff was employed for only part of any year; the Certificate Incentive and Cash-in-Lieu damages were calculated only through April 2021, when the City updated its pay practices to include those items in the regular rate used to calculate overtime; in the calculations, the Bonus was split between 2018 and 2019 to reflect the work periods for which it compensated; and the Cash-in-Lieu damages were doubled to account for recoverable liquidated damages.[36]  Then, Plaintiff's per-hour values of the Certificate Incentives, Bonus, and Cash-in-Lieu were added to equal the Shortage (the amount that the City had used to determine the regular rate).[37]  The Shortage was applied to three different categories of overtime hours to determine

---

[31]  *Id.* at ¶ 47.

[32]  *Id.*

[33]  *Id.*

[34]  *Id.*

[35]  *Id.* at ¶ 48(a).

[36]  *Id.*

[37]  *Id.* at ¶ 48(b).

Plaintiffs' damages.[38]  For the category of scheduled overtime hours, the calculation was Number of Scheduled Overtime Hours x Shortage x 0.5 because Plaintiffs had already been paid the correct regular rate for the straight time portion of that time as their base salary.[39]  For the other categories of paid overtime, the calculation was Number of Paid Overtime Hours x Shortage x 1.5.[40]  For the two categories of damages relating to the under-calculation of the regular rate, Plaintiffs were allocated 100% of potential damages using the maximum recovery period, including liquidated damages, which exceeds what Plaintiffs could expect to recover in litigation.[41]

The third category of overtime (scheduled overtime hours that were not paid as overtime due to the improper designation of a 14-day work period for Plaintiffs working a 48/96 schedule) was calculated as follows:[42]  Plaintiffs would have averaged 6 hours of scheduled overtime in each 14-day pay period, equaling 156 hours of scheduled overtime each year.[43]  However, based upon the misalignment between the 48/96 Schedule and the City's designated 14-day work period, the parties determined that Plaintiffs worked 330.22 hours of regularly scheduled overtime during those pay periods each year but were only paid for 52.14 hours, resulting in 278.08 hours of scheduled overtime worked but not paid each year.[44]  Those damages for scheduled but unpaid overtime were calculated with a 0.5 multiplier "because Plaintiffs' base salaries already

---

[38]      *Id.*

[39]      *Id.* at ¶ 48(c).

[40]      *Id.* at ¶ 48(d).

[41]      *Id.* at ¶ 48(e).

[42]      *Id.* at ¶ 49.

[43]      *Id.* at ¶ 49(a).

[44]      *Id.* at ¶ 49(b)(c).

compensated them for the straight time portion of the hours worked in excess of 106 hours in 14-day work period."[45]  Therefore, the calculation was Number of Hours x (Regular Rate + Shortage) x 0.5, resulting in a maximum recovery of $942,728.43 for scheduled overtime worked but not paid.[46]  $361,970.09 was allocated on a *pro rata* basis for those unpaid overtime damages, representing a 38.4% of the maximum recovery for this element of damages.[47]

Those three categories of overtime damages were totaled to determine the final settlement payment to each Plaintiff.[48]  One-half of the allocation represents back pay for unpaid wages and the other half represents liquidated damages.[49]  Each Plaintiff "will receive 100% of the maximum recovery for scheduled overtime hours and other categories of paid overtime, and 38.4% of the maximum recovery for scheduled overtime worked but not paid."[50]

After reviewing the record and counsel's representations, the Court concludes that Plaintiffs' recovery in this settlement is fair and reasonable.  *See Goddard v. City of Cathedral City*, 2021 WL 8441289, at *3 (C.D. Cal. Jan. 19, 2021) (concluding that a net recovery of 42% was "well within the range of reasonableness for wage and hour actions" in a FLSA settlement); *Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (concluding that a FLSA settlement, which constituted between 30% and 60% of recoverable damages, was a "tangible monetary benefit" for the class members).  Therefore, this factor favors the approval of the Settlement Agreement.

---

[45]    *Id.* at ¶ 49(d).

[46]    *Id.* at ¶ 49(e).

[47]    *Id.* at ¶ 49(f).

[48]    *Id.* at ¶ 50.

[49]    *Id.*

[50]    *Id.* at ¶ 51.

**b.** **Stage of Proceedings and Amount of Discovery Completed**

"So long as the parties have 'sufficient information to make an informed decision about settlement,' this factor will weigh in favor of approval." *Selk*, 159 F. Supp. 3d at 1177 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239 (citing *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

In October and November 2021, the parties attended private pre-litigation mediations with the Honorable S. James Otero (Ret.).[51] The parties continued their efforts to resolve their issues informally through late 2022.[52] In August 2023, the parties exchanged further payroll and timekeeping data to prepare additional damages calculations.[53] The parties agree that they have sufficient information based upon the parties' pre-litigation investigations, their exchange of potential damages calculations and initial disclosures, and consideration of the private mediator's views to make informed decisions about settlement.[54]

In view of the parties' pre-litigation investigation, informal discovery, and formal discovery, the Court concludes that the parties possess "sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239 (citation omitted). Therefore, this factor weighs in favor of settlement.

---

[51]    Yee Declaration ¶ 5; Mastagni Declaration ¶ 26.

[52]    Yee Declaration ¶ 5.

[53]    *Id.* at ¶ 8; Mastagni Declaration ¶ 30.

[54]    Yee Declaration ¶ 8; Mastagni Declaration ¶ 41.

### c.    Seriousness of Litigation Risks Faced by the Parties

Settlement may be favored where there is "significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).

Here, the parties have shown that many variables could affect Plaintiffs' recovery.  For example, as stated above, if liquidated damages are denied, then Plaintiffs' range of recovery would be reduced by 50%,[55] and, if Brea's method for calculating FLSA liability prevails, then "Plaintiffs' damages for unscheduled overtime would be reduced approximately 70%."[56]  Accordingly, the Court concludes that this factor weighs in favor of approving the Settlement Agreement.

### d.    Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself."  *Slezak v. City of Palo Alto*, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017).  Here, the Settlement Agreement contains the following Release of Claims:

> PLAINTIFFS understand that their acceptance of the TOTAL SETTLEMENT PAYMENT constitutes a full and complete settlement of all of their claims relating to the ACTION against the CITY under the FLSA and memorandum of understanding between the City and BFA in regard to overtime pay that may exist or have existed during the Relevant Statutory Period, including all claims made in the ACTION for unpaid overtime, liquidated damages, interest, and attorneys' fees and costs, and PLAINTIFFS hereby

---

[55]    Yee Declaration ¶ 11(c).

[56]    Mastagni Declaration ¶ 32(1).

fully, finally, and completely release, waive, and discharge the CITY, and its officers, agents, employees, successors and assigns from any further claims under the FLSA and memorandum of understanding between the CITY and BFA for anything that has occurred during the applicable Relevant Statutory Period ("RELEASED CLAIMS").

All PARTIES to this AGREEMENT understand that this release extends only to all grievances, disputes, or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from or attributable to PLAINTIFFS' claims that the CITY violated the FLSA. The PARTIES understand that this release does not include claims relating to conduct or activity that does not arise from or is not attributable to PLAINTIFFS' FLSA overtime claims. The PARTIES understand that this is a compromise settlement of disputed claims, and that nothing herein shall be deemed or construed at any time or for any purpose as an admission of the merits of any claim or defense.

The PARTIES further acknowledge that any and all rights granted them under section 1542 of the California Civil Code are hereby expressly waived regarding PLAINTIFFS' FLSA claims during the Relevant Statutory Period but not as to any other claims. Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RLEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER,**

**WOULD HAVE MATERIALLY AFFECTED HIS
OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY**.[57]

The parties assert that that release is "narrowly-tailored and carefully drawn."[58]  The Court agrees.  Thus, this factor favors the approval of the settlement.

> **e.    Experience and Views of Counsel and Opinions of Participating Plaintiffs**

"In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Selk*, 159 F. Supp. 3d at 1176 (citing *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)).

Here, Plaintiffs' counsel has over "twenty years of experience litigating wage and hour and employment law matters," and he has "litigated and settled numerous lawsuits alleging violations of the" FLSA.[59]  Brea's counsel has practiced law for 18 years and he has "developed an expertise" regarding the FLSA, providing FLSA advice and counsel to numerous California public agencies and training public agencies on their obligations under the FLSA.[60]

Counsel's extensive experience supports approving the Settlement Agreement.  However, there is insufficient evidence regarding the opinions of the participating plaintiffs of the settlement.  Therefore, this factor weighs only slightly in favor of approval.

---

[57]    Settlement Agreement and Release ¶ 6.

[58]    Motion 25:4-5.

[59]    Mastagni Declaration ¶ 9.

[60]    Yee Declaration ¶ 2.

### f.    Possibility of Fraud or Collusion

Here, the parties assert that they conducted settlement negotiations at arms-length.[61]  During their initial settlement discussions, the parties used a third-party mediator.[62]  Each individual Plaintiff had a "full and fair opportunity to consult with Plaintiffs' counsel regarding the terms of the proposed settlement."[63]  As of the date of the Mastagni Declaration, "all 43 plaintiffs have returned their fully executed Settlement Agreement and Release Individual Signature Page."[64]

Based upon that information, the Court finds no evidence that the Settlement resulted from fraud or collusion.  Accordingly, this final factor also weighs in favor of settlement.

### 3.    Conclusion Regarding Fairness and Reasonableness

In view of the facts and relevant law, the Court concludes that every factor weighs in favor of approving the Settlement Agreement.  Accordingly, the Settlement Agreement is a fair and reasonable resolution of bona fide disputes between the parties in this FLSA action.

### B.    Approval of Attorney's Fees

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180 (citation omitted).  "Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine a reasonable attorney's fee."  *Id.*  The Ninth Circuit "encourage[s] courts to guard against an

---

[61]    *Id.* at ¶ 13; Mastagni Declaration ¶ 56.

[62]    Yee Declaration ¶ 5; Mastagni Declaration ¶ 26.

[63]    Mastagni Declaration ¶ 60.

[64]    *Id.* at ¶ 59.

1    unreasonable result by cross-checking their calculations against a second

2    method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir.

3    2011).  Accordingly, the Court applies the percentage-of-the-common-fund

4    method and then cross-checks the attorney's fee award with the lodestar

5    method.

6            **1.    Percentage of the Common Fund Method**

7            "Under the percentage of the fund method, the court may award class

8    counsel a given percentage of the common fund recovered for the class."

9    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015).  The

10   Ninth Circuit has "established a 25 percent 'benchmark' in percentage-of-the-

11   fund cases that can be 'adjusted upward or downward to account for any

12   unusual circumstances involved in [the] case.'" *Fischel v. Equitable Life Assur.*

13   *Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Paul, Johnson, Alston &*

14   *Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

15           The Settlement Agreement allocates $190,176 to Plaintiffs' counsel as an

16   attorney's fees award, which sum represents 22.7% of the total settlement

17   amount of $837,500.[65]  That award is consistent with the benchmark for

18   attorney's fees in common fund cases.  *See Rodriguez v. Danell Custom*

19   *Harvesting, LLC*, 327 F.R.D. 375, 392 (E.D. Cal. 2018) ("The usual range for

20   common fund attorney fees are between twenty to thirty percent.").  Still, the

21   Court will crosscheck that award with the lodestar method.

22           **2.    Lodestar Method**

23           "Under the lodestar method, the court multiplies a reasonable number of

24   hours by a reasonable hourly rate." *Fischel*, 307 F.3d at 1006.  The Court must

25   use reasonable hourly rates of lawyers in the community in which the district

26   court sits.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

27

28   [65]    Motion 27:14-16; Mastagni Declaration ¶ 61.

-17-

2008).  The party seeking to establish that certain hourly rates are reasonable may do so by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing examples from past cases of the relevant community rate.  *See id.* at 980-81.  A "district court has wide latitude in determining the number of hours that were reasonably expended." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).  The district court should exclude time entries that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citing *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)).

Plaintiffs' counsel itemized the work that they performed in this case as follows:  David E. Mastagni (Partner) performed 136.3 hours of work; Taylor Davies-Mahaffey (Associate) performed 124.1 hours of work; Other Associates performed 35 hours of work; and paralegals and support staff performed 83.14 hours of work.[66]  The Court concludes that those hours are reasonable, in view of the informal and formal discovery taken and the stipulations reached between the parties.

Plaintiffs' counsel contends that those fees are reasonable when compared to the 2022 Real Rate Report.[67]  "To determine reasonable hourly rates for partners, associates, and paralegals, numerous courts in this District and elsewhere have turned to the annual Real Rate Report as a helpful guide." *Sarabia v. Ricoh USA, Inc.*, 2023 WL 3432160, at *8 (C.D. Cal. May 1, 2023) (collecting cases).  The 2022 Real Rate Report provides that for Los Angeles area attorneys working in the "Employment and Labor" practice area, the 2022 average for partners is $743, the 2022 average for associates is $446, and the 2022 average for paralegals is $247.  *See id.* (citing the 2022 Real Rate Report).

---

[66]    Mastagni Declaration ¶ 63.

[67]    Motion 28:19-29:2.

-18-

Applying those rates to the hours worked in this case, Plaintiffs' counsel's attorneys' fee would equal $192,765.08, which is above Plaintiffs' counsel's awarded fee through the settlement agreement.[68]  Accordingly, the Court concludes that Plaintiffs' counsel's awarded fee of $190,176 is reasonable. Additionally, the Court concludes that the $19,199 award of costs to Plaintiffs is reasonable.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      The parties' joint motion for approval of the FLSA settlement is **GRANTED**.

2.      The parties are **DIRECTED** to perform their settlement obligations in accordance with the terms set forth in the Settlement Agreement.

3.      Plaintiffs' counsel is **AWARDED** $190,176 in attorney's fees, and Plaintiffs are **AWARDED** $19,199 in costs.

4.      The Court retains exclusive jurisdiction over the action for all matters relating to the litigation, including the administration, interpretation effectuation, or enforcement of the Settlement Agreement and this Order.

5.      This action is **DISMISSED with prejudice**.

   **IT IS SO ORDERED.**

Dated:_____March 18, 2024_____                    _____
                                                  John W. Holcomb
                                                  UNITED STATES DISTRICT JUDGE

---

[68]      Mastagni Declaration ¶ 64.

-19-